MAZIN A. SBAITI, ESQ.
CA Bar No. 275089
mas@sbaitilaw.com
SBAITI & COMPANY PLLC
1201 Elm Street – Suite 4010
Dallas, TX  75270
T:  (214) 432-2899
F:  (214) 853-4367
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLACK MOUNTAIN EQUITIES, INC. and GEMINI SPECIAL OPPORTUNITIES FUND, LP | §<br>§<br>§<br>§ | Case No. 3:18-cv-1745-BAS-KSC |
| *Plaintiffs*, | §<br>§ | **Second Amended Complaint for Declaratory Relief and Breach of Contract** |
| vs. | § | |
| PLAYERS NETWORK, INC. | §<br>§<br>§ | |
| *Defendant*. | § | |

**TO THE JUDGE OF THIS HONORABLE COURT:**

This is a declaratory judgment action to declare the substantive rights of Plaintiffs Black Mountain Equities, Inc. ("Black Mountain") and Gemini Special Opportunities Fund, LP ("Gemini") (together "Plaintiffs"), pursuant to a series of transaction documents attached hereto as Exhibits A through M.  Plaintiffs also seek damages for Defendant's breach of contract through its failure to honor Notices of Exercise of Warrants to Purchase Common Stock.

# I.

## __NATURE OF THE ACTION__

1.      Plaintiffs are financial institutions who work with small businesses in need of capital to help grow their businesses and allow them to flourish. They are a critical component in the world of finance as many businesses, such as Defendant Players Network, Inc., are in need of investment capital, but lack the requisite historical performance and financial stability to appeal to larger financial institutions—in other words, they are very risky bets.

2.      Players Network, Inc. is a publicly traded entity (ticker symbol "<u>PNTV</u>") that sought to raise capital for continuing operations and growth of its business.

3.      Plaintiffs entered into two nearly identical transactions with Defendant Players Network, Inc. wherein Defendant (i) borrowed money from Plaintiffs, secured by a promissory note; and (ii) separately issued a warrant to each Plaintiff initially exercisable for 1,500,000 shares of common stock of Players Network, Inc. at $0.14; there are four warrants in total.

4.      Each of the warrants has an Aggregate Exercise Price Payable of $210,000 (1,500,000 x $0.14). The warrants have anti-dilution and best-pricing provisions that adjust the exercise price to match any later-issued securities which granted the holder common stock or common stock equivalent below $0.14 per share. In the event of an issuance below $0.14 per share, the warrant quantity proportionally increases such that the Aggregate Exercise Price Payable remains at $210,000. For example, if Defendant issued shares of common stock at $0.10, then the warrant exercise price would be reduced to $0.10 and the warrant quantity would increase to 2,100,000, thereby preserving the Aggregate Exercise Price Payable of $210,000. This anti-dilution provision is commonly found in warrants to preserve the value of the warrants. There was similar language in securities issued by Defendant to Fourth Man, LLC in October of 2017.

5.      On June 13, 2017, Defendant issued shares to an unrelated third party at $0.075 (7.5 cents) per share. Defendant acknowledged that this adjusted the warrant exercise price to $0.075 (7.5 cents) per share in a letter entitled "Dilutive Issuance Notice" issued by Defendant and signed by Mark Bradley, the CEO of Players Network, Inc.

6.      On October 27, 2017, Defendant entered into a convertible note and warrant transaction with Fourth Man, LLC wherein Defendant agreed to a variable pricing mechanism in the note that set the conversion price for the note at 75% of the lowest traded price of common stock over the previous 15 days (the "Fourth Man Note").

7.      The indisputable trading data shows that the variable pricing mechanism in the Fourth Man Note set the conversion price of the Fourth Man Note at $0.0264 (2.64 cents) per share, which in turn caused the exercise price of each of the Plaintiffs' warrants to go to $0.0264 (2.64 cents) per share and for the quantity of each warrant to increase to 7,954,545 ($0.0264 * 7,954,545 = $210,000).

8.      Plaintiff Black Mountain attempted to exercise the warrants into shares at 2.64 cents per share. But Defendant communicated it would not honor any exercises of the warrants at that exercise price, arguing that Plaintiffs essentially do not have the right to exercise at the adjusted contractual price via the anti-dilution/best price provisions in the warrants.

9.      Moreover, Plaintiffs are now aware that Defendant issued shares of its common stock to an unrelated investor at a price of $0.01834 per share on March 21, 2019 pursuant to a financing Defendant entered into on May 1, 2018 with SBI Investments, LLC.  Defendant was obligated to inform Plaintiffs of the issuance, however, Defendant purposefully withheld this information in violation of its obligations under Plaintiffs' Warrants.  Thus, the correct Adjusted Exercise Price under Plaintiffs' Warrants is this new lower price of $0.01834.

10.     Accordingly, Plaintiffs seek a declaration of their rights as to the enforceability of the warrants' anti-dilution language, and that under the warrants they are entitled to an adjusted exercise price of $0.01834 (1.834 cents) per share and subject to adjustments lower, in the event the Defendant issues common stock or common stock equivalents below $0.01834, and a declaration that each warrant is currently exercisable for a new warrant quantity of 11,450,382 shares, resulting in the issuance of 7,791,845 shares under the Cashless  Exercise formula in the Warrants, subject to further increase in the event the Defendant issues common stock or common stock equivalents below $0.01834.

## II.

## THE PARTIES

11.     Plaintiff Black Mountain Equities, Inc. is a California corporation with its principal place of business in California.

12.     Plaintiff Gemini Special Opportunities Fund, LP is a Delaware limited partnership with its principal place of business in California. Its managing partner is Gemini Strategies, Inc., a California corporation with its principal place of business in California (together, "Gemini"). It is the successor in interest to Gemini Master Fund Ltd., who is one of the parties to the warrants at issue in this litigation.

13.     Defendant Players Network, Inc. is a Nevada corporation with its principal place of business in Nevada and can be served with process through its registered agent Michael S. Pratter, 1771 East Flamingo Drive, Suite 201A, Las Vegas, NV  89119.

## III.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction).  Because the Plaintiffs are citizens of different states than Defendant's citizenship, complete diversity thus exists, and the value of the dispute or amount in controversy exceeds $75,000.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because the parties agreed to San Diego County as proper venue, and a substantial part of the events or omissions giving rise to the claim occurred in, and a substantial part of property that is the subject of the action is situated in San Diego County.

16.     Personal jurisdiction over the Defendant is proper because Defendant has purposefully availed itself of the State of California, the California market, California businesses, and the California laws by contracting with California entities, agreeing that some or all of the promissory notes would reside in California, agreeing to repay California-based debt, doing business within California, and agreeing to be sued in California under Section 13 of the warrants at issue in this litigation.

### IV.

### FACTUAL BACKGROUND

17.     At issue in this lawsuit are several financial instruments.

18.     On May 8, 2017, there was a Securities Purchase Agreement between Players Network, Inc., as the seller, and Black Mountain Equities, Inc., and Gemini Master Fund, Ltd. on the other hand (the "May SPA") (Exhibit A).

19.     Under the May SPA, Defendant issued a Promissory Note to Black Mountain Equities, Inc., in the principal amount of $165,000, dated May 8, 2017 (PMTV-BME-01) (Exhibit B), and a Promissory Note to Gemini Master Fund Ltd. in the principal amount $165,000, dated May 8, 2017 (PMTV-GEM-01) (Exhibit C).

20.     Under the May SPA, Defendant issued two warrants, one each to Plaintiff Black Mountain Equities, Inc. and to Gemini Master Fund Ltd., for 1,500,000 shares exercisable at $0.14 with an Aggregate Exercise Price Payable of $210,000. (BME Warrant (Exhibit D) and Gemini Warrant (Exhibit E) (together, the "May Warrants").

21.     On September 14, 2017, a Securities Purchase Agreement was entered into between Players Network, Inc., as the seller, and Black Mountain Equities, Inc.,

and Gemini Master Fund, Ltd. on the other hand (the "September SPA") (Exhibit F).

22.    Under the September SPA, Defendant issued a Promissory Note to Black Mountain Equities, Inc. in the principal amount of $158,000 (PMTV-BME-02) (Exhibit G), and a Promissory Note to Gemini Master Fund Ltd. in the principal amount of $158,000 (PMTV-GEM-02) (Exhibit H), both dated September 14, 2017.

23.    Under the September SPA, Defendant issued two warrants, one each to Black Mountain Equities, Inc. and to Gemini Master Fund Ltd., for 1,500,000 shares exercisable at $0.14 with an Aggregate Exercise Price Payable of $210,000 (BME Warrant (Exhibit I) and Gemini Warrant (Exhibit J) (together, the "September Warrants").

24.    Under the May and September Warrants, each Plaintiff is entitled to exercise their warrants by either (i) paying the Aggregate Exercise Price Payable of $210,000 ("cash exercise") or by (ii) exercising for fewer shares according to the formula provided in the warrant ("cashless exercise").

25.    Under the May and September Warrants, each Plaintiff is entitled to an Exercise Price of $0.14 (14 cents) per share subject to adjustment. Each warrant has an Aggregate Exercise Price Payable of $210,000 (1,500,000 warrant shares multiplied by the exercise price $0.14).

26.    Where a subsequent issuance of common stock or common stock equivalents is for less than $0.14 per share, each Plaintiff (as the warrant holder) is entitled to the share price provided in the subsequent issuance.

1

2

27.     Section 5.3 entitled "Subsequent Equity Sales" provides:

3

4

5

6

7

8

9

10

11

12

13

14

     5.3      <u>Subsequent Equity Sales</u>. If the Company, at any time while this Warrant is outstanding, shall sell or grant any option to purchase, or sell or grant any right to reprice, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase) any Common Stock or Common Stock Equivalents, entitling any person to acquire shares of Common Stock, at an effective price per share less than the then Exercise Price (such lower price, the "<u>Base Share Price</u>" and such issuances collectively, a "<u>Dilutive Issuance</u>") (if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which are issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share which is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance), then the Exercise Price shall be reduced (and only reduced) to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the Aggregate Exercise Price Payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the Aggregate Exercise Price Payable prior to such adjustment. Such adjustment shall be made whenever such Common Stock or Common Stock Equivalents are issued.  The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock subject to this Section 5.3, indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice the "<u>Dilutive Issuance Notice</u>").  For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 5.3, upon the occurrence of any Dilutive Issuance, after the date of such Dilutive Issuance the Holder is entitled to receive a number of Warrant Shares based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise.

15

16

17

18

19

20

28.     Thus, under Section 5.3, if the Defendant issues Common Stock or Common Stock Equivalent at a price lower than the then current exercise price, then the exercise price shall be "reduced (and only reduced) to equal the Base Share Price" at which the new issuance occurred and the number of Warrant Shares issuable shall be increased to maintain the $210,000 Aggregate Exercise Price Payable.

21

22

29.     Right below Section 5.3 is the Defendant's CEO's initials, signed by him.

23

24

25

26

30.     Sections 5.1. 5.2, 5.3 and 5.4 of each warrant provide that the holder of the warrant is entitled to maintain the $210,000 Aggregate Exercise Price Payable of the warrant and it cannot be diluted. (*See* Exhibits D, E, I and J, at §§ 5.1-5.4 respectively).

27

28

31.     Thus, under Section 5.3, if the Defendant offers any Common Stock or Common Stock Equivalents which include securities that are convertible into,

exercisable into, or exchangeable into shares of common stock of the Defendant where the price of the issuance – whether the actual price or the exercise price – is lower than $0.14, then Plaintiffs get the benefit of that lower issuance.

32.     This includes where the price is itself variable due to a "floating conversion" price, as one sees in many convertible notes.

33.     Upon information and belief, Defendant (also the "Company"), issued a convertible note with a variable conversion price on October 27, 2017 (Exhibit K).

34.     The October 27, 2017 convertible note provided Fourth Man with the right to convert its note into shares of common stock at a floating rate equal to 75% of the lowest traded price of common stock from the prior 15 days (the "Fourth Man Conversion Price").

35.     The application of the Fourth Man Conversion Price on May 2, 2018, when one of the Plaintiffs chose to exercise some of its warrants, yielded a $0.0264 per share exercise price for each of Plaintiffs' Warrants.

36.     Under Section 5.3 of the Warrants, the application of the Fourth Man Conversion Price was effective for all of the May and September Warrants, irrespective of when Plaintiffs became aware of the October convertible note issuance.

37.     Therefore, the exercise price for the warrants as of May 2, 2018 was $0.0264 per share, and the warrant quantity for each warrant increased to 7,954,545 ($210,000/.0264).  Following March 21, 2019, the exercise price for the warrants was $0.01834 per share, the warrant quantity for each warrant increased to 11,450,382 shares.

38.     Moreover, under Section 5.3, the Defendant was under an affirmative duty to notify Plaintiffs of any dilutive issuance by sending a "Dilutive Issuance Notice" to them on the following trading day.

39.     Defendant indeed had issued a Dilutive Issuance Notice on September 21, 2017 for the issuance of Common Stock at $0.075 per share.

40.    But no Dilutive Issuance Notice was sent following the issuance  on October 27,  2017 to Fourth Man, LLC.

41.    Additionally, Defendant approved and acknowledged in a January 7, 2018 Selling Stockholder Notice and Questionnaire that (i) the May Warrants had been adjusted and were now exercisable at $0.075 per share and for a quantity of 2,800,000 shares of common stock ($210,000/$0.075 = 2,800,000) which is a dispositive fact that clearly demonstrates Defendant's acknowledgement and understanding of Section 5.3 of the Warrant, and (ii) the September Warrants were exercisable for 1,500,000 shares of common stock at $0.14 per share. (Exhibit L)

42.    On January 7, 2018, Plaintiffs were unaware of the issuance of the Fourth Man Note (with the Fourth Man Conversion Price) which was not disclosed until the 2017 10-K was made public on April 17, 2018.  If Plaintiffs had been provided notice by the Defendant of the Fourth Man Note, as Defendant was required to do, then both the May and September Warrant exercise price and quantity would have been adjusted at that time.

43.    On or about June 4, 2018, Plaintiff Black Mountain attempted to exercise both the May and September Warrants at the $0.0264 rate by issuing a properly issued exercise notice.

44.    The exercise was rejected, and so it was withdrawn.

45.    Plaintiffs were then informed by Defendant and its counsel that they would no longer receive the benefit of Section 5.3.

46.    Essentially the Defendant, without explanation, justification or defense, and in contravention of Plaintiffs' rights, has unilaterally decided to ignore and repudiate the terms of the Warrants, and Plaintiffs are unable to realize the value of their Warrants, unless the Court clarifies whether their rights are as construed herein, or their rights are as Defendant alleges.

47.    Moreover, on March 21, 2019, Defendant issued its stock to a third party at a per-share price of $0.01834 (1.834 cents per-share).  This once again

automatically triggered the provisions of Section 5.3 of each of the Warrants, entitling Plaintiffs to likewise exercise all of the Warrants at an Adjusted Exercise Price of 1.834 cents per share.

48.     Plaintiffs issued Notices of Exercise to Defendant, attached hereto as Exhibits M, N and O, exercising what is referred to as a "Cashless Exercise" of three of the Warrants.  Pursuant to each Notice of Exercise, Plaintiffs were entitled to receive 7,791,845 shares which had a fair market value of $0.0574 per share.

49.     Defendant unilaterally and without justification refused to honor any of these Notices of Exercise.

50.     Defendant thereby caused Plaintiffs $447,251.90 in damages under each of these three Warrants (*i.e.* the fair market value of the shares wrongfully withheld), representing aggregate damages of $1,341,755.70.

V.

CAUSES OF ACTION

FIRST CAUSE OF ACTION<br>Declaratory Relief Under 28 U.S.C. § 2201 *et seq.*<br>and Nevada Revised Statutes § 30.010 *et seq.*

51.     The foregoing allegations in the Factual Background are incorporated by reference as if fully set forth herein.

52.     28 U.S.C. § 2201(a) authorizes a party, such as the Plaintiffs, to ask a Court of proper jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

53.     28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

54.     NRS § 30.040 provides that "[a]ny person interested under a deed, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

55.     NRS § 30.050 provides that "[a] contract may be construed either before or after there has been a breach thereof."

56.     NRS § 30.100 further provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

57.     NRS § 30.120 provides that "[i]n any proceeding under NRS 30.010 to 30.160, inclusive, the court may make such award of costs as may seem equitable and just."

58.     Section 5.3 of the warrants clearly sets the exercise price of the warrants, whether a cash or cashless exercise, at the lowest price offered to a third party for securities purchased, or optioned, from the Company.

59.     The flagrant refusal to honor the exercise request due to the non-recognition of the dilutive effect of the October 27, 2017 convertible note and its own pricing terms raises a live controversy over the construction and meaning of the warrants, placing Plaintiffs' rights in jeopardy and raising a ripe controversy over the legal relations between each Plaintiff and the Defendant.

60.     The controversy has risen to the point of incivility: To wit, Mark Bradley, as the CEO of Players Network, Inc., has threatened the principals of the

Plaintiffs with defamation and public smearing if they were to persist in their efforts to realize the value of their securities. Nonetheless, Plaintiffs have persisted.

61.     Thus, while the language of the warrants appears plain and clear to the Plaintiffs, Defendant's obstinacy in its refusal to even acknowledge the dilution(s) it has effectuated and to honor the exercise requests makes relief sought hereunder necessary and justiciable.

62.     The Parties selected Nevada law as the law of construction of the contract.

63.     Under Nevada law, a contract entered into by two sophisticated parties will be construed according to its plain meaning, and any construction thereof will give maximal effect to the parties' intentions and the overall purpose of the contract.

64.     The purpose of the anti-dilution provisions in the warrants is to give Plaintiffs the benefit of any price decrease in the shares so as to preserve the value of their investment.

65.     Depriving Plaintiffs of the anti-dilution effects effectively deprives them of the value of their investment. Defendant's refusal to honor the dilutive adjustments from Section 5 of the warrants materially impairs the value of the warrants and places Plaintiffs in the position of potentially losing hundreds of thousands of dollars in value if they were to attempt to exercise their rights under the warrants. It is just that simple.

66.     Accordingly, Plaintiffs respectfully request a declaration of their rights under the contract, specifically that under Section 5.3 of the Warrants, the exercise price of the Warrants is $0.01834 per share.

67.     Plaintiffs further request an award of costs and attorneys' fees as the Court deems reasonable and just under N.R.S. § 30.120.

1
2

### SECOND CAUSE OF ACTION
### Breach of Contract

3
4

68.     The foregoing allegations in the Factual Background are incorporated by reference as if fully set forth herein.

5
6

69.     Each of the Warrants represents a valid and binding contract between one of the Plaintiffs and Defendant.

7
8

70.     All conditions precedent for Plaintiffs' exercise of the Warrants have been satisfied.

9
10
11

71.     Plaintiffs validly exercised their Warrants under the Warrants' Cashless Exercise provisions, entitling Plaintiffs to 7,791,845 shares under each of the Warrants, at the Adjusted Exercise Price of $0.01834 per share.

12

72.     Defendant failed to honor Plaintiffs' valid Notices of Exercise.

13
14
15

73.     As a result, Defendant has improperly refused to issue Plaintiffs shares with an aggregate fair market value of $1,341,755.70 ($0.0574 per-share on the date of breach).

16
17

74.     Defendant has thereby proximately and directly caused Plaintiffs $1,341,755.70 in economic damages.

18
19

75.     Plaintiffs also seek their attorneys' fees and costs under Section 17 of the Warrants.

20
21

### VI.
### PRAYER FOR RELIEF

22
23
24
25
26

76.     Plaintiffs request relief in the form of declaratory relief, reimbursement of attorneys' fees pursuant to NRS § 30.120 and Section 17 of the Warrants, damages for breach of contract in the amount of $1,341,755.70, pre-judgment and post-judgment interest, and all other such orders and relief as the Court deems reasonable and just, to which Plaintiffs are entitled.

27
28

1

2

3

4

Dated: October 16, 2019                 **SBAITI & COMPANY, PLLC**

5                                       */s/  Mazin A. Sbaiti*

6                                       Mazin A. Sbaiti
                                        CA Bar No. 275089
7                                       mas@sbaitilaw.com
8                                       SBAITI & COMPANY PLLC
                                        1201 Elm Street – Suite 4010
9                                       Dallas, TX  75270
10                                      T:  (214) 432-2899
                                        F:  (214) 853-4367
11

12                                      ***Counsel for Plaintiffs***

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28